**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MARIA WALDRON,** : | |
| Plaintiff : | |
| v. : | **CIVIL ACTION NO. 1:CV-07-2040** |
| **MICHAEL J. ASTRUE,** : | **(KANE, C.J.)** |
| Commissioner of  | **(MANNION, M.J.)** |
| Social Security : | |
| Defendant : | |

**REPORT AND RECOMMENDATION**

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Disability Insurance Benefits, ("DIB"), and Supplemental Security Income, ("SSI"), under Titles II and XVI of the Social Security Act, ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f.

**I.   PROCEDURAL HISTORY.**

The plaintiff protectively filed an application for DIB and SSI on June 29, 2005, alleging disability since March 14, 2005, due to a heart condition, depression, anxiety, high blood pressure, cholesterol and petit mal seizures. (TR. 48, 64). The state agency denied her claim initially and she filed a timely request for a hearing. (TR. 29-34). A hearing was held on January 11, 2007, at which the Administrative Law Judge, ("ALJ"), heard testimony from the plaintiff, represented by counsel, and a vocational expert, ("VE"). (TR. 301-33). On August 2, 2007, the ALJ issued a decision denying the plaintiff benefits. (TR. 9-20).

The plaintiff requested review of the ALJ's decision. (TR. 8). The Appeals Council denied her request on October 23, 2007, thereby making the

ALJ's decision the final decision of the Commissioner. (TR. 4-6). 42 U.S.C. § 405(g).

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 7, 8).

## II.   STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any

2

>individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. DISABILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. *See* 20 C.F.R. § 404.1520.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520.

In the present matter, the ALJ proceeded through each step of the sequential evaluation process and concluded that the plaintiff was not disabled within the meaning of the Act. (TR. 12-20). At step one, the ALJ found that the plaintiff has not engaged in substantial gainful work activity at any time since her alleged disability onset date, March 14, 2005. (TR. 14). At step two, the ALJ concluded that the plaintiff's degenerative joint disease, coronary artery disease (status post successful bypass surgery), and obesity were severe within the meaning of the Regulations. (TR. 15-16). At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in

Appendix 1, Subpart P, Regulations No. 4. (TR. 17);  20 C.F.R. Pt. 404, Subpt. P, App. 2.

At step four, the ALJ found that the plaintiff is capable of performing her past relevant work as a retail sales clerk. (TR. 19). The ALJ found at step five that the plaintiff has the residual functional capacity, ("RFC"), to perform a wide range of light work activity with restrictions. (TR. 17-19). The ALJ therefore concluded that the plaintiff had not been under a disability, as defined in the Act, at any time since March 14, 2005, her alleged disability onset date.  20 C.F.R. §§ 404.1520(f). (TR. 20).

## IV.   BACKGROUND.

The plaintiff was born on September 6, 1943 and was sixty-one (61) years old on her alleged disability onset date. (TR. 48, 307). She is therefore considered a person of "advanced age" under the Regulations.  20 C.F.R. §§404.1563(e) and 416.963(e). The plaintiff completed three years of high school and has past relevant work experience as a deli clerk and a retail sales clerk. (TR. 308-09, 329).  The plaintiff stopped working in March 2005. (TR. 311, 316).

The plaintiff testified that she suffers from severe back pain, neck pain, leg pain, shortness of breath and is unable to stand for long periods of time. The plaintiff suffered an aortic aneurysm and underwent a cardiac catheterization in October 2003. (TR. 250, 255). The plaintiff also underwent rotator cuff surgery and vein stripping in her left leg.  (TR. 311-13, 315, 320). After the surgery, the plaintiff continued to work until March 2005, when she developed back pain. The plaintiff underwent another cardiac catheterization in 2005.  (TR. 173-78, 256-57, 311-13).  A CT scan of the abdomen revealed

status-post repair of aortic dissection.[1] (TR. 119, 233-34). Subsequent to the surgery, the plaintiff was discharged home with blood pressure medication. (TR. 112).

The plaintiff testified that she can walk for about thirty minutes at a time (with no climbing of stairs), and can stand and sit for fifteen minutes at a time. (TR. 313, 317). She does light cleaning, occasionally grocery shops and drives. (TR. 319).

Vocational expert, John Newman, testified based on the *Dictionary of Occupational Titles*. (TR. 326-32). The vocational expert classified the plaintiff's past work as a deli clerk as light, unskilled work, and her past work as a retail sales clerk was classified as light, semi-skilled work. (TR. 329). In response to the ALJ's hypothetical questions, the vocational expert testified that the plaintiff would be capable of performing her past relevant work as a retail sales clerk. (TR. 330). The vocational expert also testified that if the hypothetical individual could only sit and stand for fifteen minutes at a time, the individual would not be able to perform any of the plaintiff's past relevant work. (TR. 331). Further, if the findings of the medical examiner were accepted, the vocational expert stated that the individual would be able to perform the plaintiff's past relevant work. (TR. 331-32).

## V.   DISCUSSION.

The plaintiff argues that the ALJ erred by finding that her impairments were not severe under the Regulations. (Doc. 7 at 5-6). Specifically, the plaintiff states that the ALJ erred by failing to mention her chronic aortic

---

[1] Aortic dissection is the splitting of the media layer of the aorta, leading to formation of a dissecting aneurysm. *Stedman's Medical Dictionary*, 528 (27th ed. 2000).

5

dissection and failing to state why he rejected the opinion of the plaintiff's treating cardiologist, Barry H. Lowell, M.D. (Doc. 7 at 6). The plaintiff also states that she meets Medical-Vocational Rule 201.06.[2]  (Doc. 7 at 8).

The defendant states that substantial evidence supports the ALJ's step three finding that the plaintiff's impairments did not meet the listings and that she had the RFC to perform her past relevant work as a retail sales clerk. (Doc. 8 at 7-8). The defendant states that the ALJ did not fail to discuss the plaintiff's history of aortic dissection. (Doc. 8 at 9). Rather, the ALJ determined at step two of the sequential evaluation process that the plaintiff's coronary artery disease (status post bypass surgery) was a severe impairment. (TR. 15). In *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981), the court stated that "the ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." In the present matter, the ALJ's detailed discussion of the evidence meets this standard. *See, e.g., Haseler v. Acting Commissioner of SSA*, 33 Fed. Appx. 631, 634 (3d Cir. 2002).

On his May 2007 RFC Assessment, Dr. Lowell stated that the plaintiff's primary diagnosis was chronic aortic dissection. (TR. 291). Dr. Lowell ultimately determined that the plaintiff remained capable of performing sedentary work. Regardless of Dr. Lowell's diagnosis, the ALJ considered and evaluated the plaintiff's cardiac condition when rendering his decision.

---

[2]  Section 201.06 of the Grids directs that an individual who is limited to sedentary work, of advanced age, who is a high school graduate or more, and has previous skilled or semi-skilled work experience, with no transferable skills, is disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.06.  The plaintiff's reliance on the Grid Rule is misplaced, as she was not a high school graduate (TR. 308), and she was clearly found by the ALJ to have the RFC to perform light work. The plaintiff was not maximally limited to sedentary work by the ALJ, as required by Grid Rule 201.06.

At step three of the sequential evaluation process, the ALJ evaluated the plaintiff's hypertensive coronary artery disease pursuant to Listings 4.03 and 4.04 (*Ischemic heart disease*), however he found that the plaintiff failed to meet the listing requirements. (TR. 17); 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 4.03, 4.04.  To meet Listing 4.04(A), the plaintiff had to perform on an exercise tolerance test at a workload equivalent to 5 METS[3] or less, have three separate ischemic episodes within a consecutive twelve-month period, or suffer from coronary artery disease, among other requirements. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 4.04.

The plaintiff underwent a stress test in December 2004. (TR. 208). The test revealed a moderately reversible inferior defect consistent with ischemia,[4] normal resting left ventricular function and mild inferior hypokinesis.[5] (TR. 208). The plaintiff exercised to 6 METS and achieved 86% of her predicted maximum heart rate. (TR. 208). Exercise between seven and sixteen METS indicates that patients have no resulting limitations on their physical activity. On March 15, 2005, it was noted that the plaintiff underwent another stress test, which was abnormal. (TR. 194). A February 6, 2006 stress test revealed that the plaintiff had no chest discomfort at 96% of the predicted maximum heart rate, a normal hemodynamic response to exercise, poor exercise capacity and nuclear images pending. (TR. 229). EKG findings were

---

[3]  Metabolic equivalent, ("MET"), is "the oxygen cost of energy expenditure measured at supine rest." *Stedman's Medical Dictionary*, 613 (27th ed. 2000).

[4]  Ischemia is "[l]ocal anemia due to mechanical obstruction (mainly arterial narrowing or disruption) of the blood supply." *Stedman's Medical Dictionary*, 924 (27th ed. 2000).

[5]  Hypokinesis is diminished or slow movement. *Stedman's Medical Dictionary*, 861 (27th ed. 2000).

consistent with ischemia. (TR. 229). Substantial evidence supports the ALJ's evaluation of the plaintiff's cardiac condition.

The ALJ also evaluated the plaintiff's joint disease pursuant to Listings 1.04 (*Disorders of the spine*) and 14.02 (*Systemic lupus erythematosus*). (TR. 17); 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 1.04, 14.02. To meet Listing 1.04, the plaintiff had to show a disorder of the spine "resulting in compromise of a nerve root or the spinal cord," in addition to evidence of one of the following three: nerve root compression, spinal arachnoiditis, or lumbar spine stenosis. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04. There was no evidence of nerve root compression, spinal arachnoiditis, or resulting spinal stenosis in the medical record. There also was no evidence of the plaintiff's inability to ambulate effectively. The ALJ found that the plaintiff failed to meet the severity requirements, specifically noting that the plaintiff can walk and stand (albeit limitedly) without any assistive device. (TR. 17). Moreover, in January 2005, the plaintiff reported that she felt great and had no back pain. (TR. 196).

The ALJ evaluated the plaintiff's depression and anxiety pursuant to Listings 12.04(B) (*Affective Disorders*) and 12.06(B) (*Anxiety Related Disorders*), but found that she failed to meet the listing requirements. (TR. 16-17); 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.04, 12.06. Pursuant to the "B" criteria of the listings, the ALJ determined that the plaintiff had only mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties maintaining concentration, persistence or pace, and no episodes of decompensation. (TR. 16); 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.04(B), 12.06(B). The ALJ also found that the plaintiff failed to meet the "C" criteria of the listings. (TR. 16); 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.04(C), 12.06(C).

On December 12, 2005, a state-agency physician completed a

Psychiatric Review Technique Form and determined that the plaintiff's impairments were not severe. (TR. 93-106). The doctor found that the plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. (TR. 103). Further, the plaintiff's depression and anxiety were not expected to last more than twelve months, as required by the Act. (TR. 16); 42 U.S.C. § 432(d)(1)(A). The ALJ therefore found that the plaintiff's mental impairments were "non-severe." (TR. 16).

Substantial evidence supports the ALJ's finding that the plaintiff failed to meet the severity requirements of any of the listings.

Regarding Dr. Lowell's opinion, the defendant states that the plaintiff did not regularly treat with him between her surgery in 2003 and the March 2005 evaluation. (Doc. 8 at 9). The defendant states that Dr. Lowell only treated the plaintiff occasionally during this time period. (Doc. 8 at 8). The plaintiff underwent a cardiac catheterization in October 2003. (TR. 252-55, 264-66). After the procedure, Dr. Lowell diagnosed right coronary artery stenosis with dissection and stenting, diagonal stenosis. (TR. 255).

On March 9, 2005, the plaintiff complained to Dr. Lowell of occasional chest pressure and heart racing. (TR. 207). The plaintiff also stated that she felt good and was often tired. (TR. 207). On March 15, 2005, the plaintiff underwent a left heart catheterization and abdominal angiogram. (TR. 204). After the procedure, Dr. Lowell diagnosed coronary artery disease. (TR. 204). On March 23, 2005, the plaintiff complained of a rash, but stated that she otherwise felt ok. (TR. 207). The defendant notes that, despite the plaintiff's allegations of severe back and leg pain, she did not mention these complaints during her March 2005 visit with Dr. Lowell. (Doc. 8 at 9).

Regarding Dr. Lowell's May 2007 opinion, the defendant notes that it was submitted five months after the ALJ hearing. (Doc. 8 at 6-11). On the May

2007 RFC Assessment, Dr. Lowell diagnosed chronic aortic dissection, coronary artery disease and chronic back pain. (TR. 291). Dr. Lowell found that the plaintiff was capable of performing sedentary work. (TR. 291-98). Specifically, Dr. Lowell determined that the plaintiff could occasionally and frequently lift and carry less than ten pounds, stand and/or walk for less than two hours in an eight-hour workday, sit for less than six hours in an eight-hour workday, push and pull unlimitedly, she could frequently climb, balance, stoop, kneel, crouch and crawl, and she had environmental restrictions.[6] (TR. 292-95).

The ALJ referenced Dr. Lowell's findings and noted that, although the doctor restricted the plaintiff exertionally, he found that she could frequently engage in many postural positions. (TR. 15-16). Notably, Dr. Lowell, the plaintiff's treating source, found that she remained capable of performing sedentary work activity. Additionally, in January 2006, plaintiff's counsel indicated that no treating source ever found that the plaintiff was disabled in any way from work. (TR. 91).

Residual functional capacity refers to what a plaintiff can do despite her limitations. 20 C.F.R. § 404.1545(a). In determining the plaintiff's RFC, the ALJ must consider all relevant evidence, including the medical evidence of record and the plaintiff's subjective complaints. 20 C.F.R. § 404.1545(a). The final responsibility for determining a plaintiff's residual functional capacity is reserved for the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. §§ 404.1527(e)(2), (3). At the hearing level, the responsibility for determining a plaintiff's residual

---

[6] Regarding the environmental restrictions, Dr. Lowell determined that the plaintiff should avoid all exposure to extreme cold, extreme heat, noise, vibration and hazards, and she should avoid even moderate exposure to wetness and humidity.  (TR. 295).

functional capacity is reserved for the ALJ. 20 C.F.R. §404.1546. Upon review of the record, substantial evidence supports the ALJ's determination that the ALJ's RFC determination and the ALJ's evaluation of Dr. Lowell's opinion. (TR. 16).

The plaintiff next argues that the ALJ erred by relying on the opinion of the consultative examiner, Sethuraman Muthiah, M.D. (Doc. 7 at 7-8). The plaintiff underwent a consultative examination with Dr. Muthiah on November 21, 2005. (TR. 215-17). Dr. Muthiah diagnosed myofascial pain in the lumbar area, coronary artery disease, and history of petit mal seizures. (TR. 217). He noted that the plaintiff had no seizures at the time of the evaluation and the seizures manifested themselves in the form of occasional stares. (TR. 217). Dr. Muthiah also noted that the plaintiff's heart rate and rhythm were normal with no murmurs. (TR. 216). A musculoskeletal examination revealed minimal paraspinal muscle spasm in the lumbar region. (TR. 216). The plaintiff's range of motion of the shoulder, neck and hip were within normal limits. (TR. 216). A straight leg raising test was 80 degrees on both legs.[7] (TR. 216). A mental status examination revealed anxiety and depression. (TR. 217).

Dr. Muthiah also completed a Medical Source Statement on November 21, 2005. (TR. 219-20). He found that the plaintiff could frequently lift and carry twenty pounds, she had no limitations with standing or walking, she could sit for two to four hours in an eight-hour workday, and could occasionally bend, kneel, stoop, crouch, balance and climb. (TR. 219-20).

---

[7] The straight leg-raising test, ("SLR"), is designed to detect nerve root pressure, tension, or irritation of the sciatic nerve. With the knee fully extended, the physician raises the involved leg from the examining table. A positive SLR test requires reproduction of pain at an elevation of less than 60 degrees. A positive SLR is the single most important sign of nerve root pressure produced by disc herniation. Andersson and McNeil, *Lumbar Spine Syndromes*, 78-79 (Springer-Verlag Wein, 1989).

When evaluating the medical opinions, the ALJ accorded substantial weight to Dr. Muthiah's opinion. (TR. 15).

On December 29, 2005, a state-agency consultant completed a Physical RFC Assessment and determined that the plaintiff was capable of performing light duty work with environmental restrictions. (TR. 221-27). State agency medical consultants are "highly qualified" physicians and experts in the evaluation of the medical issues in disability claims under the Act, and their opinions are entitled to weight. *See* Social Security Ruling 96-6p and 20 C.F.R. §§ 404.1527(f), 416.927(f). Thus, the ALJ did not err in crediting the opinion of Dr. Muthiah, a state-agency consultant.

Subsequent to the ALJ hearing, the plaintiff submitted records from J. Roberto Vergara, M.D. (TR. 273-88). On April 2, 2007, the plaintiff reported to Dr. Vergara that she felt "quite well," her gastroesophageal reflux disease was well-controlled and she was frustrated that she had not received disability. (TR. 273). Upon examination, Dr. Vergara noted that the plaintiff's heart was regular with no murmurs, gallops or rubs. (TR. 273). Dr. Vergara made no reference to the plaintiff's back or leg pain.

While the record reflects that the plaintiff suffers from limitations as a result of her impairments, there is substantial evidence in the record to support the ALJ's finding that the plaintiff remains capable of performing light work activity with restrictions, including her past relevant work as a retail sales clerk. (TR. 17-19).

**VI.   CONCLUSION.**

Based upon the foregoing, **IT IS RECOMMENDED THAT**:

the plaintiff's appeal from the decision of the Commissioner of Social Security denying her claim for DIB and SSI benefits, (Doc. 1), be **DENIED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date**: June 30, 2008
O:\shared\REPORTS\2007 Reports\07-2040.01.hhs.wpd